UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO. 8:22-cv-1476-TPB-TGW

SCOTT HARGIS, d/b/a SCOTT HARGIS PHOTO

Plaintiff,

vs.

AMERICAN HOUSE SENIOR LIVING, LLC and JOHN DOE 1-10,

Defendants.
_______________________________/

**DEFENDANT AMERICAN HOUSE SENIOR LIVING, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, American House Senior Living, LLC ("Defendant" or "AHSL"), pursuant to Fed. R. Civ. P. 56, files this Motion for Partial Summary Judgment.

**UNDISPUTED MATERIAL FACTS**

1. Plaintiff Scott Hargis d/b/a Scott Hargis Photo ("Plaintiff") is a photographer who takes photographs of real estate.

2. Between 2011 and 2018, Plaintiff was hired by non-party Atria Senior Living ("Atria") to photograph senior living communities at properties Atria owned or operated. Exhibit 1, Excerpts of Tr. of Video Deposition of Scott Hargis, Feb. 22, 2023, at 11:8-22, 12:20-22, 13:13-15; *see* Declaration of Scott Hargis dated Feb. 24, 2023 [D.E. 51-1 ¶ 3].

3. In 2018, Plaintiff was hired by Atria to take site-specific photographs showcasing various Atria communities to assist Atria with its marketing efforts. Hargis Decl. [D.E. 51-1 ¶ 3].

4. The communities Plaintiff photographed included three in Florida—Lutz, Sarasota, and Orange City. Hargis Decl. [D.E. 51-1 ¶ 3]. These are referenced herein as the Lutz Property, Sarasota Property, and Orange City Property, respectively.

5. Each photoshoot at an Atria property was treated as an individual engagement, even if there were photoshoots at multiple properties in a given city. Ex. 1, Hargis Depo. at 13:22–14:8.

6. At Atria's request, Plaintiff invoiced photoshoots at each property separately. Ex. 1, Hargis Depo. at 44:8-9, 63:12-21, 66:1-17.

7. Plaintiff did not invoice individual photos. *Id.* at 63:12-14.

8. The scope of the licenses granted to Atria were embodied in the invoices for the photographs. Hargis Decl. [D.E. 51-1 ¶ 5].

9. Plaintiff was paid a licensing fee for each location. Ex. 1, Hargis Depo. at 72:24-73:4.

10. On August 7, 2018, Plaintiff photographed the Lutz Property. [D.E. 51-3 at 2].

11. On August 8, 2018, Plaintiff photographed the Sarasota Property. [D.E. 51-3 at 3].

12. On August 14, 2018, Plaintiff sent Atria invoice no. 1402 for payment in the amount of $4,535.00 for the license of eight photos of the Lutz Property (these photos together, the "Lutz Photos").[1] [D.E. 51-3 at 2]. "Upon payment in full" Plaintiff grants "a non-exclusive license to Atria Senior Living, and Ventas, Inc. to use" the Lutz Photos for limited "publication and display." *Id.* The "[l]icense is valid in perpetuity." *Id.*

13. Also on August 14, 2018, Plaintiff sent Atria invoice no. 1403 for payment in the amount of $4,287.50 for the license of nine photos of the Sarasota Property (these photos together, the "Sarasota Photos").[2] [D.E. 51-3 at 3]. "Upon payment in full" Plaintiff grants "a non-exclusive license to Atria Senior Living, and Ventas, Inc. to use" the Sarasota Photos for limited "publication and display." *Id.* The "[l]icense is valid in perpetuity." *Id.*

14. On September 15, 2018, Plaintiff photographed the Orange City Property. [D.E. 51-3 at 4].

---

[1] The Lutz Photos are titled as follows: hargis_180807_1523; hargis_180807_1549; hargis_180807_1593; hargis_180807_1625; hargis_180807_1656; hargis_180807_1679; hargis_180807_1707; and hargis_180807_1732. [D.E. 51-3 at 2].

[2] The Sarasota Photos were titled as follows: hargis_180808_1746; hargis_180808_1768; hargis_180808_1795; hargis_180808_1840; hargis_180808_1885; hargis_180808_1914; hargis_180808_1948; hargis_180808_1960; and hargis_180808_1975. [D.E. 51-3 at 3].

15. On September 24, 2018, Plaintiff sent Atria invoice no. 1419 for payment in the amount of $4,287.50 for the license of eight photos of the Orange City Property (these photos together, the "Orange City Photos").[3] [D.E. 51-3 at 4]. "Upon payment in full" Plaintiff grants "a non-exclusive license to Atria Senior Living, and Ventas, Inc. to use" the Orange City Photos for limited "publication and display." *Id.* The "[l]icense is valid in perpetuity." *Id.*

16. Each invoice was paid. Ex. 1, Hargis Depo. at 86:4-21; *see* [D.E. 51-3].

17. Payment of each invoice included the high resolution delivery of the photos to the client's inbox. Ex. 1, Hargis Depo. at 47:25–48:11.

18. Plaintiff, through an agent, registered the Lutz Photos, Sarasota Photos, and Orange City Photos under a single copyright registration, Registration Number VA 2-140-916 (the "Registration"). [D.E. 51-5]; Hargis Decl. [D.E. 51-1 ¶ 6].

19. The Registration is titled "Copyright Registration for a Group of Published Photographs," and was issued pursuant to 37 C.F.R. § 202.4(i). Registration [D.E. 51-5 at 2].

20. In November 2020, an entity affiliated with AHSL purchased the Lutz Property, Sarasota Property, and Orange City Property from entities affiliated

[3] The Orange City Photos were titled as follows: hargis_180915_2106; hargis_180915_2136; hargis_180915_2162; hargis_180915_2196; hargis_180915_2083; hargis_180915_2229; hargis_180915_2257; and hargis_180915_2285. [D.E. 51-3 at 4].

with Atria. AHSL Response to Interrogatory 4 [D.E. 51-16 at 9]. During the due diligence process for this sale, Atria or its affiliate or agent put the Subject Photos into a "data room" which was accessed by AHSL and/or its affiliate as part of their diligence into whether to close on the purchase of the properties. *Id.* at 10. Neither AHSL nor any of its affiliates were notified at that time that neither Atria nor any of its affiliates owned the Subject Photos or that the license to use the Subject Photos could not be transferred to the purchaser in connection with the sale. *Id.*

21. After the sale of the properties closed, in December 2020, AHSL's affiliate who manages the website www.americanhouse.com (the "Website") posted the photographs on the Website, without knowledge that the seller(s) did not own the copyright to the Subject Photos or that the license to use such Subject Photos was non-transferable, and under the misunderstanding that the Subject Photos or the license to use them was transferred to the buyer in the sale. *Id.*

22. The Subject Photos were taken down from the Website on or before May 12, 2021, after ImageRights International communicated to AHSL or its affiliate that Plaintiff owned the copyright to the Subject Photos. *Id.*

23. In Fall 2021, the Website was redesigned. When the redesign went live on or about November 2, 2021, older versions of some pages were used to pull in content such as text and images. Some or all of the Subject Photos were mistakenly

among those images that were uploaded to the Website at this time by Airfoil, a third party hired to design and implement the Website redesign. *Id.* at 11.

24. On or around November 3, 2021, Airfoil was notified that the Subject Photos on the Website should be replaced with the images that they were previously replaced with. Unfortunately, this was not implemented. *Id.*

25. On December 3, 2021, AHSL or its affiliate, received a letter from Plaintiff's counsel stating that some or all of the Subject Photos were still on the Website. The Subject Photos on the Website were promptly taken down on or before the morning of December 7, 2021 and have not been posted on the Website since then. *Id.*

26. In the operative complaint, Plaintiff alleged that he "authored a compelling series of twenty-two photographs depicting the Lutz, Orange City, and Sarasota" communities. Compl. and Demand for Jury Trial ("Complaint" or "Compl.") [D.E. 1 ¶ 9]. "These twenty-two photographs served as the subject matter of this dispute and will hereinafter be referred to collectively as the 'Photos.'" *Id.*

27. The twenty-two photos are comprised of the Lutz Photos, the Orange City Photos, and all but three of the Sarasota Photos (collectively, the "Subject Photos"). *Compare* [D.E. 51-3] *with* [51-17 at 7].

28. Plaintiff failed to provide computations for his actual damages in his initial disclosures. Exhibit 2, Pl's Initial Disclosure Regarding Damages. Plaintiff could not articulate any actual damages he suffered during discovery. Ex. 1, Hargis Depo. at 149:8–150:1; Exhibit 3, Pl's Response to Interrogatory 12.

29. Plaintiff failed to provide a sufficient causal link between the alleged infringement of the Subject Photos and AHSL's actual sales or leases to support a claim for profits. Ex. 3, Pl's Res. to Int. 12; *see* Ex. 2, Pl's Initial Disclosure.

30. Plaintiff could not provide the market value for the Subject Photos. *E.g.*, Ex. 1, Hargis Decl. at 108:2-25, 109:4-7, 110:21–111:8, 115:3-7.

31. Plaintiff has never licensed the Subject Photos to anyone other than Atria Senior Living, and Ventas, Inc. because no one has asked for a license. *Id.* at 143:24–144:3.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the nonmoving party bears the burden of proof at trial, the moving party may discharge [its] initial [burden] by showing that there is an absence of evidence to support the nonmoving party's case or by

showing that the nonmoving party will be unable to prove its case at trial." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citation and quotation marks omitted). When the movant has satisfied its initial burden, the non-movant must demonstrate the existence of a genuine dispute for trial with summary judgment evidence. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). Courts must "view all submitted evidence in the light most favorable to the non-moving party." *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018).

## ARGUMENT

### I. Defendant is Entitled to Partial Summary Judgment on the Issue of Damages

Plaintiff bears the burden of establishing its damages. *See Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999). A plaintiff in a copyright infringement action may seek damages in the form of *either* (1) the plaintiff's actual damages and any additional profits of the infringer; or (2) statutory damages. 17 U.S.C. § 504(a). Defendant addresses statutory damages before moving to actual damages.

#### A. <u>Defendant is entitled to partial summary judgment on the issue of the number of "works" in this case for the purposes of statutory damages.</u>[4]

The Copyright Act permits a plaintiff to obtain statutory damages "in a sum of not less than $750 or more than $30,000," or up to $150,000 for willful

[4] Although Defendant seeks partial summary judgment on statutory damages, Defendant does not concede that Plaintiff is entitled to such damages, and reserves all rights to challenge Plaintiff's entitlement to statutory damages on any and all grounds.

infringement, for "any one work." 17 U.S.C. § 504(c)(1), (2). "[A]ll the parts of a compilation or derivative work constitute one work." *Id.* § 504(c)(1). "A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works." 17 U.S.C. § 101. "A 'collective work' is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id.*

Plaintiff has baldly asserted that his twenty-two photos are twenty-two separate works for the purposes of the statutory damages. However, Plaintiff's bald claim should be rejected. At most, there are three works at issue here.

The issue of "what constitutes a work for statutory damages purposes under the Copyright Act . . . is a mixed question of law and fact." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1277 (11th Cir. 2015) (affirming district court's ruling that 10,411 individual photos were 178 works under Section 504(c)(1)). "A district court may determine a mixed question of fact and law at summary judgment." *Tate v. Potter*, No. 04-61509-CIV, 2008 WL 11400757, at *5 (S.D. Fla. Mar. 25, 2008) (Jordan, D.J.) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 844–45 (11th Cir. 1990); *Mundy v. S. Bell Tel. & Tel. Co.*, 676 F.2d 503, 505 & n.4 (11th

Cir. 1982)). At least one district court in this circuit decided the number of works at summary judgment. *See Greenberg v. Nat'l Geographic Soc.*, No. 97-3924-CIV, 2003 WL 25841579, at *6 (S.D. Fla. Feb. 18, 2003) (granting defendant's motion for partial summary judgment holding that 64 photographs constituted four "works" for the purposes of statutory damages in Copyright Infringement case). *Accord Tang v. Putruss*, 521 F. Supp. 2d 600, 610 (E.D. Mich. 2007); *Coogan v. Avnet, Inc.*, No. CV040621PHXSRB, 2005 WL 2789311, at *6 (D. Ariz. Oct. 24, 2005). This Court too should determine the number of "works" at summary judgement.

In the Eleventh Circuit, "the independent economic value test" applies to determine the number of works at issue. *Yellow Pages Photos, Inc.*, 795 F.3d at 1280. "This test focuses on whether each expression has an independent economic value and is, in itself, viable." *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996). The inquiry is not "whether a separate unit in a multi-work project could possibly have some independent economic value if sold separately,"' instead, courts look to how the owner chose to "create, market, deliver, register, and describe the photos." *Yellow Pages Photos, Inc.*, 795 F.3d at 1278, 1281.

1. *The Lutz Photos, Sarasota Photos, and Orange City Photos were created as three groups.*

Of primary concern to Courts is how the photographs are created. Courts have found that photographs taken of one subject, by one photographer, in one session, constitute one "work." *See Yellow Pages Photos, Inc.*, 795 F.3d at 1280–81;

*Tang*, 521 F. Supp. 2d at 609–10; (holding numerous photographs constituted one work where "the photographs were taken at a single session, by a single photographer, for a single purpose"); *Coogan*, 2005 WL 2789311, at *5–6 (same); *Greenberg*, 2003 WL 25841579, at *3, *5–6 (holding that numerous photographs constituted four works where "the photographs taken by the Plaintiff appeared in four magazine issues, and were taken as part of an assignment for each magazine").[5]

Here, the photos of each property clearly fit the bill. The Lutz Photos were taken of one subject, the Lutz Property, by one photographer, Plaintiff, in one session, August 7, 2018. Thus, the Lutz Photos are one "work" under Section 504(c)(1).

The Sarasota Photos were taken of one subject, the Sarasota Propriety, by one photographer, Plaintiff, in one session, August 8, 2018. Thus, the Sarasota Photos are one "work" under Section 504(c)(1).

The Orange City Photos were taken of one subject, the Orange City Property, by one photographer, Plaintiff, in one session, September 15, 2018. Thus, the Orange City Photos are one "work" under Section 504(c)(1).

---

[5] *Tang*, *Coogan*, and *Greenberg* were cited with approval by the Eleventh Circuit in *Yellow Pages Photos, Inc.*, 795 F.3d at 1280–81.

Because the Lutz Photos, Sarasota Photos, and Orange City Photos each constitute one "work" under Section 504(c)(1), if Plaintiff can recover statutory damages, those damage must be calculated based on three works, only.

2. *Plaintiff Marketed the Subject Photos as Groups, Not Individually.*

The conclusion that the Subject Photos are three works is further supported by how the Subject Photos were marketed. "Courts applying the independent economic value test have [rightly] considered the way the owner marketed his work product as relevant to the determination of the number of works at issue," by looking to whether there was record evidence that the plaintiff marketed each photograph separately. *See Yellow Pages Photos, Inc.*, 795 F.3d at 1282. Where "there is no evidence in the record that Plaintiff marketed the images to the public separately," *Coogan*, 2005 WL 2789311, at *6, courts have found that the photographs constitute one work. Here, Plaintiff has never licensed the twenty-two photos to anyone other than Atria Senior Living, and Ventas, Inc. because no one has asked for a license. Ex. 1, Hargis Depo. at 143:24–144:3.

Moreover, courts consider whether the photos could reasonably have a purpose beyond the purpose of which they were taken.[6] *See Tang*, 521 F. Supp. 2d at 610 (holding photographs of models wearing defendants' dresses were one

---

[6] This purpose of the photo may also be considered in the "created" factor of the independent economic value test. *See supra* § I.A.1.

"work" reasoning "[r]egardless of any artistic value, the photographs of models wearing Defendants' dress line is of no economic value to Plaintiff" and that "[t]he only purpose for the photographs is to advertise the [defendant's] clothing line").

*Stross v. Centerra Homes of Texas, LLC*, is instructive in this regard. __F. Supp. 3d__, No. 1:17-CV-676-RP, 2022 WL 17825893 (W.D. Tex. Sept. 12, 2022). *Stross* was a copyright infringement case involving photographs of homes for a real estate company. The parties asked the court to determine whether the 50 photos at issue were individual works, or part of two compilations for the purpose of Section 504(c)(1). *Id.* at *1. Applying the independent economic value test as set forth in *Yellow Pages*, the court held that the photos were part of two compilations—not 50 individual works. The court reasoned that the plaintiff's "photos were sold as sets for each home rather than marketed at the individual level," and that plaintiff "was paid based on each home photographed, not on the number of photos taken." *Id.* at *2. "Each photo was taken with the same economic purpose: to market homes for Centerra Homes and showcase the same set of four homes." *Id.* at *1.

The case at bar is nearly identical to *Stross*. Like *Stross*, where the "photos were sold as sets for each home rather than marketed at the individual level," here, Plaintiff invoiced shoots at each property separately, and did not invoice individual photos. Ex. 1, Hargis Depo. at 44:8-9, 63:12-21, 66:1-17; *see* [D.E. 51-3].

Like *Stross*, where the plaintiff "was paid based on each home photographed, not on the number of photos taken," here, each photoshoot at an Atria property was treated as an individual engagement, even if there were photoshoots at multiple properties in a given city, Ex. 1, Hargis Depo. at 13:22–14:8, and Plaintiff was paid a licensing fee for each location. *Id.* at 72:24-73:4. Like *Stross*, where "[e]ach photo was taken with the same economic purpose: to market homes for Centerra Homes and showcase the same set of four homes," here Plaintiff was hired by Atria to take site-specific photographs showcasing various Atria communities to assist Atria with its marketing efforts, Hargis Decl. [D.E. 51-1 ¶ 3], and the Lutz Photos, Sarasota Photos, and the Orange City Photos showcased the Lutz Property, Sarasota Property, and Orange City Property, respectively. Thus, the Lutz Photos were taken for the same economic purpose; the Sarasota Photos were taken for the same economic purpose; and the Orange City Photos were taken for the same economic purpose.

The collective, rather than individual, marketing of the Lutz Photos, Sarasota Photos, and Orange City Photos, supports the conclusion that each of those groups are one work for the purposed of Section 504(c)(1).

3. *The Subject Photos and Licenses were delivered in three groups, not individually.*

Plaintiff's distribution of the Subject Photos also supports the conclusion that they are three works, not twenty two. The Lutz Photos, Sarasota Photos, and

Orange City Photos were separately invoiced and licensed. [D.E. 51-3]; *see* Hargis Decl. [D.E. 51-1 ¶ 5]. Payment of each invoice included the high resolution delivery of the photos to the client's inbox. Ex. 1, Hargis Depo. at 47:25–48:11. *See Yellow Pages Photos, Inc.*, 795 F.3d at 1278 (noting the plaintiff "almost exclusively distributed [the photographs] as collections to his customers . . . through a web-portal).

4. *The Subject Photos were registered in a group copyright registration.*

"Although the manner of copyright registration is not dispositive of the works issue, this Court has previously considered it to be at least a relevant factor." *Yellow Pages Photos, Inc.*, 795 F.3d at 1277. In *Yellow Pages*, the photographs were registered with the Copyright Office as groups of photographs by the phone book heading to which the photos corresponded. *Id.* The Court looked to the requirements for group registration found in the Code of Federal Regulation, which provided "that to be eligible for group registration, the 'same person' must have taken all of the photos, and the photos must have been published in similar circumstances, i.e. 'within the same calendar year,' and if 'published on the same date' the common date of publication 'must be identified.'" *Id.* at 1280 (citing former 37 C.F.R. § 202.3(b)(10)). The requirements for group registration "reinforce the conclusion that the headings and photos associated with them are collective works." *Id.*

These requirements of group registration are similar to the aspects of the "created" factor that many courts have found to be of primary concern of the works issue—photos taken of one subject, by one photographer, in one session. *See supra* § I.A.1.

Here, the Lutz Photos, Sarasota Photos, and Orange City Photos, are all registered in the same Registration, titled "Copyright Registration for a Group of Published Photographs" which was issued by the Copyright Office pursuant to 37 C.F.R. § 202.4(i), Registration [D.E. 51-5 at 2], the current provision of the Code of Federal Regulations that governs group registration of photographs. Section 202.4(i)'s requirements are similar to the requirements noted in *Yellow Pages*: all of the photos must be created by the same author, 37 C.F.R. § 202.4(i)(3), and the photos must have been "published within the same calendar year," *id.* § 202.4(i)(6). Although the current version of this regulation differs slightly from the regulation considered in *Yellow Pages*, the conclusion here is the same as it was in that case. Satisfying the requirements of group registration reinforce the determination that the Lutz Photos, Sarasota Photos, and Orange City Photos are each collective works.

5. *Plaintiff described the Subject Photos as a Series, weighing in favor of finding three "works."*

It is well settled that a plaintiff is bound by the admissions in his pleadings. *See Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 620–21

(11th Cir. 1983). In *Yellow Pages*, the court found that it was "telling" that the plaintiff's pleadings described each collection of photos as a work. 795 F.3d at 1278. There, the plaintiff's pleadings "alleged that YPPI 'created and produced a series of photographic images as follows,' which was followed by a list of each collection of photos by heading name, and then alleged that each 'series of images is collectively referred to in this Complaint as the "Works."'" *Id.* The Court viewed this as a party admission. *Id.* at 1278, 1282.

Here, Plaintiff used nearly identical language to describe the Subject Photos in his pleading. Plaintiff alleged that he "authored a compelling series of twenty-two photographs" followed by a list of each collection of photos by location, specifically "depicting the Lutz, Orange City, and Sarasota" communities. Compl. [D.E. 1 ¶ 9]. That Plaintiff here used the term "Photos" rather than the term "Works," as in *Yellow Pages*, as the collective designation does not change the outcome. Plaintiff alleged that the Subject Photos were part of a "series," and listed the three collections by location which were subject to collective designation. This supports the conclusion that the Lutz Photos, Sarasota Photos, and Orange City Photos are each one work.

Accordingly, the Court should hold that the twenty two Subject Photos are three works for the purposes of statuary damages.

B. Defendant is entitled to summary judgment on actual damages because Plaintiff has failed to provide any evidence to support actual damages.

Plaintiff failed to meet his burden with respect to actual damages. Plaintiff failed to provide a computation of his actual damages in his initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring the initial disclosure to include "a computation of each category of damages claimed by the disclosing party"); Ex. 2, Pl's Initial Disclosure. Where, as here, "a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts routinely exercise their discretion to exclude evidence of damages for failure to provide a computation in the initial disclosures. *See City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 904–05 (11th Cir. 2013); *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010); *Rojas v. Consuegra*, No. 614CV1374ORL22GJK, 2015 WL 7750612, at *3–5 (M.D. Fla. Nov. 16, 2015).[7] Plaintiff's failure to provide a computation of damages was neither harmless nor substantially justified. *See Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." (citation omitted)). The Court should exclude actual

[7] *Report and recommendation adopted*, 2015 WL 7737222 (M.D. Fla. Dec. 1, 2015).

damages from this case. Partial summary judgment could be granted on this basis alone.

Additionally, Plaintiff failed to prove actual damages. To prove actual damages Plaintiff is required to "demonstrate a 'causal connection' between the defendant's infringement and an injury to the market value of the plaintiff's copyrighted work at the time of infringement." *Montgomery*, 168 F.3d at 1294. Here, Plaintiff identified his "actual damage" as being "deprived of the significant licensing fee he typically commands for the commercial use of his high-end professional photographs in similar contexts." Ex. 3, Pl's Res. to Int. 12. However, lost licensing fees do not constitute "evidence relate[d] to the decline in market value of Plaintiff's works." *Ordonez-Dawes v. Turnkey Properties, Inc.*, No. 06-60557-CIV, 2008 WL 828124, at *3 (S.D. Fla. Mar. 27, 2008) (denying plaintiff's motion for summary judgment on actual damages in a case involving copyright infringement of photographs of real estate). Further, Plaintiff testified that he has not licensed the Subject Photos at any time since the alleged infringement because no one has asked for a license. Ex. 1, Hargis Depo. at 143:24–144:3. *See Pronman v. Styles*, 645 F. App'x 870, 873 (11th Cir. 2016) (holding defendant was entitled to summary judgment infringement case because there was no evidence of actual damages where the plaintiff "did not know if there was a market for" the infringed photographs and "no one had offered [the plaintiffs] any money for the

photographs"). Thus, there is an absence of record evidence to support Plaintiff's claim for actual damages. Hence, Defendant is entitled to summary judgment on the issue of actual damages.

C. <u>Defendant is entitled to summary judgment on Plaintiff's claim for profits.</u>

"With respect to profits, the plaintiff must show a causal relationship between the infringement and profits, and must also present proof of the infringer's gross revenue." *Pronman*, 645 F. App'x at 873. When asked to describe the damages he seeks, Plaintiff stated the following as to profits: "using an average monthly rent for a unit in America House's communities" and "approximating the average stay as 22 months (based on industry data), for every resident American House acquires through use of the photographs, it realized about $70,400 in revenue." Ex. 3, Pl's Res. to Int. 12. Plaintiff (apparently) plans to "[e]xtrapolat[e]" this equation "across the number of communities involved in the infringements at issue." Ex. 3, Pl's Res. to Int. 12. Plaintiff's equation lacks the requisite causal nexus between alleged infringement and sales or leases to support a claim for profits. *See Ordonez-Dawes*, 2008 WL 828124, at *4 ("To award infringer's profits in this case, Plaintiff must demonstrate that the use of Plaintiff's copyrighted photographs is somehow connected to actual home sales."). Thus, summary judgment should be granted in Defendant's favor on the issue of profits.

Moreover, Plaintiff seeks an "accounting of all profits, income, receipts, or other benefit derived by Defendants" from the alleged copyright infringement, pursuant to Section 504(a)(1), (b). Compl. [D.E. 1 at 11–12 ¶ 4]. Because Defendant is entitled to summary judgment on Plaintiff's claim for actual damages and profits, Plaintiff is not entitled to an "accounting" under Section 504(a), (b). Therefore, this Court should enter summary judgment in favor AHSL on Plaintiff's claim for an accounting.

## II. Defendant is entitled to summary judgment on Plaintiff's requests for injunctive relief.

Plaintiff's Complaint included requests from equitable relief, namely a permanent injunction, and a request for an impound order. Summary judgment should be granted in Defendant's favor on both.

### A. Defendant is entitled to summary judgment on Plaintiff's request for an injunction.

A plaintiff in a copyright infringement case may seek a permanent injunction. 17 U.S.C. § 502. "A plaintiff seeking permanent injunction must demonstrate that: (1) it has suffered irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering balance of hardships between the plaintiff and defendant, remedy in equity is warranted; and (4) public interest would not be disserved by permanent injunction." *Dish Network L.L.C. v. Fraifer*, No. 8:16-CV-2549-TPB CPT, 2021 WL

6690278, at *16 (M.D. Fla. Dec. 13, 2021) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).[8]

Plaintiff failed to meet his burden to obtain a permanent injunction. Plaintiff has failed to establish that he has suffered any actual damages as a result of the alleged infringement, let alone irreparable injury. *See Bollea v. Gawker Media, LLC*, 913 F. Supp. 2d 1325, 1331 (M.D. Fla. 2012).[9] Indeed, Plaintiff did not seek a preliminary injunction in this action, which significantly undermines any claim of irreparable harm. *See, e.g.*, *Pippin v. Playboy Ent. Grp., Inc.*, No. 8:02CV2329T30EAJ, 2003 WL 21981990, at *2 (M.D. Fla. July 1, 2003) ("Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm."). Further, the party seeking an injunction must show "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (citation and quotation marks omitted). Here, after AHSL was made aware that the Subject Photos were subject to Plaintiff's copyright, the Subject Photos

[8] *Appeal dismissed*, No. 22-10186-BB, 2022 WL 1251073 (11th Cir. Apr. 11, 2022).

[9] *Bollea* involved a preliminary injunction. However, "[t]he standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (citation omitted).

were removed from the Website. AHSL Res. Int. 4 [D.E. 51-16 at 10]. The Subject Photos were briefly reposted by a third-party vender by mistake and were promptly removed when the third-party was made aware of the mistake. AHSL Res. Int. 4 [D.E. 51-16 at 11]. The Subject Photos have not been posted since. AHSL Res. Int. 4 [D.E. 51-16 at 11]. There is no evidence that there is a risk of future infringement. *See Fey v. Panacea Mgmt. Grp. LLC*, 261 F. Supp. 3d 1297, 1314 (N.D. Ga. 2017) (granting summary judgment in favor of defendant on a permanent injunction finding lack of "evidence showing a real and immediate threat of future infringements" where the defendants represented that they ceased using the copyrighted material and had no intention of using it again). What's more, Plaintiff has not established that he lacks an adequate remedy at law.

B. Defendant is entitled to summary judgment on Plaintiff's request for a seizure order.

Plaintiff requested relief includes a seizure order directing the U.S. Marshal to seize and impound all infringing items, Compl. [D.E. 1 at 11 ¶ 2], pursuant to 17 U.S.C. § 503. This provision provides no standard by which a Court should determine whether to issue an impound order. Some courts have concluded that a plaintiff must satisfy the test for a preliminary or permanent injunction. *E.g.*, *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132, 135 (D.D.C. 1984). Some Courts in this district have analyzed Section 503 under an injunction framework. *See Dallas Buyers Club, LLC v. Brennan*, No. 614CV1011ORL37GJK, 2015 WL 12778344, at *5

(M.D. Fla. May 26, 2015)[10]; *Universal City Studios Prod., LLP v. Howell*, No. 3:06CV395 J33TEM, 2007 WL 853471, at *3 (M.D. Fla. Mar. 16, 2007). This Court should analyze Plaintiff's request for an impoundment as an injunction. Because Plaintiff has failed to establish all elements necessary for injunctive relief, *see supra* § II.A, Plaintiff is not entitled to an impoundment order. Thus, summary judgment should be granted in Plaintiff's favor on the impoundment order.

**CONCLUSION**

Based on the foregoing, this Court should grant partial summary judgment in favor of Defendant.

Respectfully submitted this 23rd day of March, 2023.

WICKER SMITH O'HARA MCCOY & FORD, P.A.

*/s/ Ethan A. Arthur*
Ethan A. Arthur, Esquire
Florida Bar No. 119054
earthur@wickersmith.com
Wells Fargo Center
100 S. Ashley Drive, Suite 1800
Tampa, FL 33602
Phone: (813) 222-3939
Fax: (813) 222-3938

Jordan S. Cohen, Esquire
Florida Bar No. 551872
jcohen@wickersmith.com
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400

[10] *Report and recommendation adopted*, 2015 WL 12672125 (M.D. Fla. June 18, 2015).

Ft. Lauderdale, FL 33301
Phone: (954) 847-4800
Fax: (954) 760-9353

*Attorneys for Defendant*

**Certificate of Service**

We hereby certify that on this 23rd day of March, 2023, a true and correct copy to this Motion was filed with the Clerk of Court via the CM/ECF system which will send copies to all counsel of record.

*/s/ Ethan A. Arthur*
Ethan A. Arthur, Esquire
Florida Bar No. 119054